IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMANDA FARNSWORTH, and HEATHER WHITLOW, individually and on behalf of all others similarly situated who consent to their inclusion in a collective action,<br><br>Plaintiffs,<br><br>v.<br><br>TATTLE TAIL, INC. d/b/a Tattletale Lounge, a corporation; and DENIS G. KAUFMAN and CARLEEN J. BARNES, individuals,<br><br>Defendants. | Civil Action No. 1:14-cv-00090 |

**JOINT MOTION TO APPROVE SETTLEMENT AND
INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Amanda Farnsworth and Heather Whitlow (the "Named Plaintiffs")[1], and certain other individuals who have opted into this collective action

---

[1] Named Plaintiff Nicole Rawley and Opt-In Plaintiff Anna Kranova recently retained new counsel, who filed a Notice of Appearance and Substitution of Counsel on July 31, 2015 [Doc. 54]. On August 7, 2015, the parties stipulated to the dismissal of Rawley's claims against Defendants without prejudice [Doc. 57], and Rawley withdrew her consent to serve as party representative, and Kranova withdrew her consent to opt-in to this Action [Doc. 57-1 & 58]. Following a

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, namely Amber Akaraskul, Tanya Aviles, Victoria Bodawala, Terri Bowman, Daphine Couch, Melanie Diaz Farrar, Nicole Forrester, Amy Gardner, Mindy Hampton, Katherine Jenkins, Maria Mantilla, Casey Messing, Markel Mitchell, Stephanie Rimel, Teresa Roth, Autumn Smith, Star Sullivan, Alice Thompson, Christina Tillman, Meagan Vogel, Kristen Wayt and Jennifer Womack (the "Opt-In Plaintiffs") (collectively the "Settling Plaintiffs"), and Defendants Tattle Tail, Inc., Denis G. Kaufman and Carleen J. Barnes ( "Defendants"), by and through their respective undersigned counsel of record, move this Court to approve the parties' stipulated settlement, as required by the FLSA, and to enter the proposed Order Approving Settlement submitted herewith. This settlement contemplates payment to the Settling Plaintiffs for their purported FLSA damages and provides for payment to the Settling Parties' counsel of attorneys' fees and costs incurred in the prosecution of this lawsuit. In support of this Motion, the parties jointly represent to the Court as follows:

---

telephonic conference with counsel, the Court approved the dismissal of Rawley's claims on August 20, 2015 [Doc. 59].

## I. SETTLEMENT OF FLSA CLAIMS IN THE ELEVENTH CIRCUIT

In the Eleventh Circuit, there are two ways in which claims under the FLSA may be settled and released by employees. First, Section 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc.* v. *United States,* 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under Section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the District Court with a proposed settlement and the District Court enters a stipulated judgment approving the fairness of the settlement. *Id.* In addressing the circumstances justifying court approval of FLSA settlements in the litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the District Court to

3

approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354.

## II. THE PARTIES' SETTLEMENT AGREEMENT IS A FAIR AND REASONABLE RESOLUTION OF THE BONA FIDE DISPUTES BETWEEN THE PARTIES

### a. The Litigation and Mediated Settlement

On January 13, 2014, Plaintiffs commenced this Action by filing their Complaint [Doc. 1]. In the Complaint, Plaintiffs, former entertainers at Defendant Tattle Tail, Inc. d/b/a Tattletale Lounge ("Tattletale"), alleged that Defendants willfully misclassified Plaintiffs and other entertainers at Tattletale as independent contractors and failed to pay them minimum wages and overtime wages in violation of the FLSA, and sought to represent a class of similarly situated entertainers who worked at Tattletale in the three years prior to the filing of the Action.

On January 20, 2014, Plaintiffs moved for conditional certification and court-facilitated notice. [Doc. 7]. Defendants answered Plaintiffs' Complaint on February 3, 2014 [Doc. 11], and responded to Plaintiffs' motion for conditional certification on March 10, 2014 [Doc. 21] without opposing the requested certification. On April 8, 2014, the Court granted Plaintiffs' motion for conditional certification and approved the parties' proposed notice, which provided for a 60-day period during which putative class members could opt-in to the Action [Doc. 29]. Between January

4

13 and June 24, 2014, 30 putative class members, in addition to the Named Plaintiffs, filed notices of consent to opt-in to the Action.[2]

The parties engaged in written discovery and exchanged voluminous documents, including Plaintiffs' work schedules, check-out slips, 1099s, and records of credit card transactions. Following discovery and document production, the parties analyzed the relevant documents, prepared their respective damage calculations, and exchanged correspondence setting forth their respective settlement positions. On July 24, 2014, the parties filed a joint motion to stay all proceedings for 60 days pending settlement negotiations [Doc. 45], which the Court granted on August 1, 2014 [Doc. 46]. On September 22, 2014, the parties filed a second joint motion seeking to extend the stay for 45 days to allow them to continue their time-intensive manual damage calculations and settlement negotiations. The Court granted this motion by minute order on September 23, 2014. On November 9, 2014, the parties filed a third joint motion to stay the action for an additional 30 days to allow sufficient time to either reach a negotiated settlement or to schedule mediation. [Doc. 50] On November 11, 2014, the Court granted the parties' third motion for a

---

[2] One of the Opt-In Plaintiffs, Heather Balentine, subsequently withdrew her consent on August 20, 2014 [Doc. 47] and another, Debbie Denise Banner, signed an opt-in consent after expiration of the 60-day opt-in deadline, but Defendants agreed to include her in the proposed settlement despite her late-filed consent form.

stay and administratively closed the case pending negotiation of a final settlement. [Doc. 51]

On December 29, 2014, the parties participated in mediation with mediator Hunter R. Hughes, an experienced employment litigation attorney and mediator with Rogers & Hardin LLP. The mediation resulted in a settlement, which is memorialized in the proposed Settlement Agreement submitted herewith as **Exhibit A.** At all times during the settlement process, the parties negotiated on an arms-length basis with the assistance of experienced counsel.

Per the agreement reached at mediation, Defendants' counsel submitted a first draft of the settlement agreement to Plaintiffs' counsel on January 31, 2015. Following receipt of that draft, Plaintiffs' counsel then had to go through the laborious task of apportioning each of the Settling Plaintiffs' damages on a percentage basis of the total settlement pool, based upon the review and summation of thousands of documents. Plaintiffs' counsel then had to locate, and in some cases re-locate, each and every Settling Plaintiff and consult with them regarding the settlement. These processes were extremely time intensive and significant portion of Plaintiffs' counsels' employees were solely staffed on this. Once finalized, Plaintiffs' counsel secured the signatures of the 2 remaining Named Plaintiffs and 22 of the 29 remaining Opt-In Plaintiffs.

### b. <u>The Settlement Terms</u>

The Settlement Agreement provides for Tattletale to pay the total amount of $295,000 to resolve the claims of the 3 original named plaintiffs and 30 opt-in plaintiffs, including attorneys' fees and litigation expenses. Section III.A of the Settlement Agreement contains a schedule showing the allocation of the settlement fund amongst the class members, and the amounts attributed to attorneys' fees and litigation expenses. As a result of the withdrawal of named plaintiff Rawley and opt-in plaintiff Kranova (*see* n.1, *supra*), and the 7 Non-Signing Plaintiffs (*see* Section III, *infra*), the parties have prepared a revised allocation (submitted herewith as **Exhibit B**) reducing the total settlement fund by the amounts previously allocated to Rawley, Kranova, and the Non-Signing Plaintiffs, and the associated attorneys' fees. The revised allocation will not in any way prejudice the Settling Plaintiffs, who shall receive the same payments stated Section III.A of the Settlement Agreement. The settlement payments shall be made on a schedule with an initial payment of $60,000 (more than 23% of the total settlement) within 5 business days following the Court's approval of the settlement, and the remaining payments made over a 26-month period.[3]

---

[3] After the initial payment of $60,000, the Settlement Agreement calls for a $10,000 payment the following month, then 25 consecutive monthly payments of

In exchange for the settlement payments, the Settling Plaintiffs have agreed to dismiss the Action with prejudice, to neither reapply, nor seek re-employment with Tattletale in the future, and to release any and all claims they may have against Defendants for alleged failure to pay for work performed at Tattletale, alleged violation of the FLSA or any state wage and hour law arising from their employment with Tattletale, and all claims which were or could have been brought against Defendants in the Action.

Following good faith, arms-length negotiations, and with the assistance of a mediator with experience in FLSA cases, the parties reached a compromise settlement of all claims. At all times during the litigation and settlement negotiations, the parties were represented by experienced counsel. The Action involved heavily disputed legal and factual issues, including whether: (a) Plaintiffs, who performed as exotic dancers, qualified as "employees" or "independent contractors" (not covered under the FLSA); (b) Tattletale is entitled to an offset against any purported minimum wage liability for the performance fees it allowed Plaintiffs to retain; (c)

---

$9,000. Due to the reduction of the total settlement amount from $295,000 to $255,891.16 (*see* **Exhibit B**), the parties agree that the payment schedule should be modified to provide for an initial payment of $60,000, followed by a payment of $8,391.16 the following month, followed by 25 consecutive monthly payments of $7,500.

any alleged FLSA violation by Defendants was "willful"—thereby extending the statute of limitations from 2 to 3 years; (d) Defendants can establish a good faith defense to avoid liquidated damages; and (e) Plaintiffs are entitled to recover for the credit card fees, late fees and other fees they paid to Tattletale.

The parties agree that the settlement reflects a reasonable compromise of these disputed issues. Plaintiffs and their counsel discussed Plaintiffs' possible regular and overtime hours and pay rate and formulated proposed settlement figures. During their settlement negotiations and at the mediation, counsel for the parties submitted their respective damage calculations and case valuations. With the assistance of the mediator, the parties, through their attorneys, voluntarily agreed to the settlement terms. The Settling Plaintiffs and Defendants have approved and signed the Settlement Agreement.

The parties negotiated, determined, and calculated the amounts to be paid to each Settling Plaintiff, as set forth in the Settlement Agreement. The methodology was that a total settlement pool was determined, and Plaintiffs' counsel determined each Plaintiff's pro-rata portion of the pool based upon the records produced in discovery evidencing that Plaintiff's respective number of shifts and hours worked as a percentage of *all* shifts and hours worked by all Plaintiffs. The resulting

amounts were then divided into installment payments based upon a negotiated payment schedule.

Defendants deny any liability whatsoever, but recognize that Plaintiffs' claims would require tens of thousands of dollars to litigate to final judgment, and the likelihood of obtaining a judgment in their favor by summary judgment or by jury trial would be uncertain. Plaintiffs share Defendants' concerns about litigation costs, the inherent difficulty of testimony-based offers of proof, and, ultimately, the uncertainty of a jury verdict in their favor, or the extent of the same.

Each party to the Settlement Agreement has had a full, informed opportunity to review and analyze the individualized damage calculations made by the other party. While the parties are not in agreement about all the inferences that might properly be drawn from the evidence, they are confident that continued litigation of this case would not produce results more economically beneficial than this stipulated compromise settlement submitted to the Court.

Plaintiffs believe that the amounts they will receive pursuant to this settlement reflect a substantial portion of, or more than, what they could expect to recover if they were to prevail at trial, and then engage in collection efforts. Moreover, the attorneys' fees figure referenced in the Parties' Settlement Agreement takes into account the fact that Plaintiff's Counsel will be required to administer the payment

of Settlement Proceeds to Plaintiffs. Counsel for Plaintiffs hereby affirm that they have reviewed the Settlement Agreement terms with Plaintiffs, and that Plaintiffs understand its contents and wish the court to approve it. Further, in the context of FLSA collective action settlements, attorney's fees for plaintiffs' counsel of 33.3% of the settlement fund are typically approved as reasonable by courts in this Circuit and across the nation. *See, e.g., Heath v. Hard Rock Cafe Intern. (STP), Inc.*, 2011 WL 5877506 (M.D. Fla. Oct. 28, 2011); *Morris v. Affinity Health Plan, Inc.*, 2011 WL 6288035 (S.D.N.Y. 2011); *Matheson v. T-Bone Restaurant, LLC*, 2011 WL 6268216 \*\*7-8 (S.D.N.Y. Dec. 13, 2011); *Johnson v. Brennan*, 2011 WL 4357376 (S.D.N.Y. September 16, 2011); *In re Milos Litigation*, 2011 WL 6015705 (S.D.N.Y. 2011); *Williams v. Aramark Sports, LLC*, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011). Therefore, the parties believe that the proposed settlement is fair and reasonable and does not otherwise impermissibly frustrate implementation of the FLSA. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1240-1242 (M.D. Fla. 2010). The Settlement Agreement was reached in good faith, arms-length negotiations and constitutes a fair resolution of Plaintiffs' claims. *See Bonetti v. Embarq Mgmt. Co.,*715 F. Supp. 2d 1222, 1227 (M.D. Fla., 2009) ("Short of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness

of an FLSA settlement…Rarely will the Court be in a position to declare that such a settlement is 'unreasonable'").

## III. TREATMENT OF PLAINTIFFS WHO DID NOT JOIN THE SETTLEMENT

After presenting the proposed settlement to all Plaintiffs, 7 of the opt-in Plaintiffs did not elect to join in the settlement, or otherwise would not communicate with Plaintiffs' counsel.  These opt-in Plaintiffs are: Denise Banner, Kristen Cabrices, Elizabeth Flanagan, Rebekah Harvey, Katherine Liu, Amanda Parnell, and Sara Thomas (the "Non-Signing Plaintiffs").

First Plaintiffs' counsel moves to withdraw from representing the Non-Signing Plaintiffs.  Plaintiffs' counsel believe that a conflict of interest has arisen regarding continued representation of the Non-Signing Plaintiffs, because Plaintiffs' counsel is attempting to ensure continued payment of the settlement on behalf of the Settling Plaintiffs, and does not want to impair collection by presenting competing claims on behalf of the Non-Signing Plaintiffs, or attempting to obtain disparate results for different parties.

Second, Defendants wish to leave open the possibility that one or more of the Non-Signing Plaintiffs will subsequently join the settlement.  To that end, the parties move the Court to approve that Defendants pay the allocated settlement amounts (and respective attorney's fees) contemplated for the Non-Signing Plaintiffs into an

IOLTA escrow account maintained by Defendants' counsel, and that said amounts remain in such account for 12 months following the Court's approval of the settlement, during which time such funds would be available to any Non-Signing Plaintiff who chooses to join the settlement by notifying Defendants' counsel.[4] Should any Non-Signing Plaintiff claim her allocated portion of the settlement during the 12-month period, Tattletale shall pay her respective allocated share of the settlement within 5 business days following her execution of a release in the same form, and containing all of the same terms and conditions, as those contained in the Settlement Agreement, along with a stipulation of dismissal of that Plaintiff's claims with prejudice.  Defendants agree that upon making any such settlement payment to a Non-Signing Plaintiff, Tattletale shall also pay to Plaintiffs' counsel the respective attorney's fees attributed to that Non-Signing Plaintiff's allocated portion of the settlement payment. If, following the Court's approval of the settlement, any Non-Signing Plaintiff elects to file suit against Defendants on any claim asserted in the Action, Defendants and their counsel shall be relieved of their obligation to hold the

---

[4] The total amount to be paid into the escrow account is $11,750.27 ($7,778.85 for the Non-Signing Plaintiffs' allocation of the settlement, and $3,971.42 for the associated attorneys' fees). *See* **Exhibit B.**  Defendants shall pay this amount into the escrow account within 5 business days following the Court's approval of the settlement.

settlement funds attributable to that Non-Signing Plaintiff in escrow, and the said funds shall revert back to Tattletale. Likewise, following expiration of the 12-month escrow period, any remaining unclaimed funds in the escrow account shall revert back to Tattletale.

The further parties move the Court to require Plaintiffs' counsel to give notice to the Non-Signing Plaintiffs in the form attached hereto as **Exhibit C** that: (a) Plaintiffs' counsel no longer represent the Non-Signing Plaintiffs and their claims have been dismissed without prejudice; (b) the statute of limitations on their claims continues to run; (c) they have the right to re-file their claims against Defendants, either with new counsel or *pro se*, by commencing a new action within the statute of limitations; (e) should they chose not to do so, the allocated settlement amounts (and respective attorney's fees) contemplated for the Non-Signing Plaintiffs will be maintained in an IOLTA escrow account by Defendants' counsel, and shall remain in such account for 12 months, during which time such funds would be available to any Non-Signing Plaintiff who chooses to join the settlement by notifying Defendants' counsel.

## IV.  CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court approve the parties' settlement as a fair and reasonable disposition of the claims and

defenses asserted in this Action; and approve the releases, payment of attorneys' fees and costs, and itemized monetary distribution to the Settling Plaintiffs as set forth in the Settlement Agreement and the revised allocation set forth in **Exhibit B** hereto, give notice to the Non-Signing Plaintiffs in the form attached as **Exhibit C**, dismiss the Settling Plaintiffs' claims with prejudice, and dismiss the Non-Signing Plaintiffs' claims without prejudice, by entering the Order Approving Settlement submitted contemporaneously herewith**.**

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiffs certifies that the foregoing has been prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved by the Court in Local Rule 5.1(B).

Respectfully submitted this 24th day of September, 2015.

SMITH, COLLINS & FLETCHER, P.A.

|  |  |
|---|---|
|  | */s/* W. Anthony Collins, Jr. |
| 8565 Dunwoody Place | W. Anthony Collins, Jr. |
| Building 15 Suite B | Georgia Bar No. 141712 |
| Atlanta, GA 30350 |  |
| Phone: (678) 245-6785 | *Attorney for Plaintiffs and* |
| Fax: (888) 413-3031 | *Opt-in Plaintiffs* |
| *Anthony@SCandF.com* |  |

LAW OFFICES OF GREGORY R. FIDLON, P.C.

|  |  |
|---|---|
|  | */s/* Gregory R. Fidlon |
| 1200 Abernathy Road | Gregory R. Fidlon |
| Building 600, Suite 1700 | Georgia Bar No 259317 |
| Atlanta, GA 30328 |  |
| Phone: (770) 807-0083 | *Attorney for Defendants* |
| Fax: (770) 807-0460 |  |
| *greg@fidlonlegal.com* |  |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMANDA FARNSWORTH, and HEATHER WHITLOW, individually and on behalf of all others similarly situated who consent to their inclusion in a collective action,<br><br>Plaintiffs,<br><br>v.<br><br>TATTLE TAIL, INC. d/b/a Tattletale Lounge, a corporation; and DENIS G. KAUFMAN and CARLEEN J. BARNES, individuals,<br><br>Defendants. | Civil Action No. 1:14-cv-00090 |

## CERTIFICATE OF SERVICE

I hereby certify that I have this 24th day of September, 2015 electronically filed this JOINT MOTION TO APPROVE SETTLEMENT with the Clerk of Court using the CM/ECF system, which will send electronic notification to all participating attorneys of record.

/s/ Gregory R. Fidlon
Counsel for Defendants